NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1275n.06

No. 11-6360

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Dec 11, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KATHLEEN LAWS, | ) |
| | ) ON APPEAL FROM THE UNITED |
| Plaintiff - Appellant, | ) STATES DISTRICT COURT FOR |
| | ) THE EASTERN DISTRICT OF |
| v. | ) KENTUCKY |
| | ) |
| HEALTHSOUTH NORTHERN KENTUCKY | ) |
| REHABILITATION HOSPITAL LIMITED | ) |
| PARTNERSHIP dba HEALTHSOUTH | ) |
| KENTUCKY REHABILITATION HOSPITAL, | ) |
| | ) |
| Defendant - Appellee. | ) |

BEFORE:    CLAY and SUTTON, Circuit Judges; and RICE, District Judge.[*]

RICE, J., delivered the opinion of the court except for Part III.A.2. SUTTON, J., joined in all parts except Part III.A.2 and delivered a separate opinion, in which CLAY, J., joined and which constitutes the opinion of the court.

**RICE, District Judge.** Plaintiff-Appellant Kathleen Laws ("Laws") appeals from the district court's order granting summary judgment in favor of Defendant-Appellee HealthSouth Northern Kentucky Rehabilitation Hospital Limited Partnership ("HealthSouth"). Following her termination from HealthSouth, Laws filed suit alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and § 510

---

[*]The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. She also brought

claims of age and disability discrimination under the Kentucky Civil Rights Act ("KCRA"), Ky. Rev.

Stat. § 344.040(1)(a).

**I.**

Kathleen Laws is a licensed practical nurse who was employed by HealthSouth from 1999

until her termination in October of 2008. Most recently, Laws reported to Lynn Edmondson, who

reported to Chief Nursing Officer Debra Fey.

In 2003 and again in 2004, Laws was counseled for poor attendance. In the spring of 2005,

her husband, who was covered by her health insurance, was diagnosed with cancer and began

radiation treatments. Around that same time, Laws developed an aneurysm behind her left eye and

underwent surgery. She took four months of FMLA leave. When she returned to work in October

of 2005, she had reduced vision in her left eye, and had decreased endurance. Early in 2006, she

missed several more days of work. Laws underwent a second eye surgery in May of 2006, and took

additional FMLA leave.

In March 2007, she took more intermittent FMLA leave to address additional complications

from the aneurysm. Some of these absences were improperly considered when she was disciplined

for excessive absenteeism in June 2007. After Laws complained, HealthSouth agreed that she

should not have been disciplined for the FMLA-approved absences. Nevertheless, that disciplinary

notice remained in her personnel file.

Her attendance continued to be listed on her annual performance evaluations as an area

needing improvement. Laws missed work five times between January and May 2008 and received

another verbal counseling concerning her absences. In February 2008, Laws received a verbal warning for insubordination, after she responded rudely to an inquiry from Brenda Gosney, HealthSouth's CEO, about certain chairs that Laws had moved to the nursing station, and then flatly refused to meet with Gosney after work to discuss the incident.

Early in September 2008, Laws took four days off for a cerebral angiogram. On September 16, 2008, the wife of one of her patients expressed concern that her husband, for whom she had power of attorney, was too medicated to participate in therapy. Laws wrote a note in the patient's chart indicating that his Vicodin should be discontinued per his wife's wishes. Because Laws wrote this note in the "Physician's Order" portion of the chart, rather than in the "Progress Notes" section, the medication was discontinued without a doctor's order. The patient, in tears, subsequently complained of pain, prompting Fey to ask Edmondson to speak to Laws about the incident. Laws admitted the error and promised that it would not happen again. This charting error was eventually reported to the Kentucky Board of Nursing.

On October 1, 2008, Gosney issued Laws a written warning for insubordination after Laws referred to Gosney as "our fearless leader" in the presence of a patient and another employee. When Gosney met with Fey that day to discuss this incident of insubordination, Fey informed Gosney of the Vicodin incident that had occurred two weeks earlier. Fey then decided to suspend Laws for three days, pending further investigation of that incident.

On that same date, Fey and Gosney met with Diane Goldschmidt, HealthSouth's Human Resources Director, to discuss further options. Goldschmidt wrote a memo to Regional Corporate Human Resources Director Joseph Koehler, recommending that Laws be terminated. In addition to

3

citing the Vicodin incident, Goldschmidt also noted that "Kathy has had other disciplinary issues in the past including attendance and rudeness to the CEO." In accordance with established policy, Goldschmidt attached all of Laws' previous disciplinary actions to the memo, including the June 2007 discipline for excessive absenteeism that was based, in part, on FMLA-protected absences. Koehler approved the recommendation to terminate Laws. He maintains that, although he reviewed Laws' entire disciplinary file, he based his decision solely on the Vicodin incident. Laws was notified of the termination decision on October 3, 2008. She was 55 years old at the time.

Laws subsequently filed suit against HealthSouth, alleging disability and age discrimination under federal and state law, and violations of the FMLA and ERISA. On November 1, 2011, the district court issued a 70-page opinion, granting Defendant's motion for summary judgment in its entirety. The court held that Laws had not established a prima facie case of age discrimination, disability discrimination, or retaliation or interference under ERISA. The court also granted summary judgment on Laws' FMLA interference and retaliation claims. With respect to the FMLA retaliation claim, the court presumed that Laws had established a prima facie case, but found that she had failed to produce sufficient evidence of pretext. Laws has appealed the district court's order.

## II.

We review *de novo* a district court's grant of summary judgment. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant question is whether there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, all reasonable inferences are drawn in favor of the non-moving party, and all evidence is construed in the light most favorable to that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

### A.  FMLA Retaliation Claim

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of rights under the Act.[1] 29 U.S.C. § 2615(a)(1). It also prohibits employers from discharging or otherwise discriminating against an employee for "opposing any practice made unlawful by" the act. 29 U.S.C. § 2615(a)(2). "Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007).

### 1.  Direct Evidence

Laws argued that she had direct evidence that HealthSouth had retaliated against her for using FMLA leave. She points to the memorandum Goldschmidt sent to Koehler, which not only cited the Vicodin incident, but also referred to past discipline for "attendance" issues and rudeness to the CEO. Attached to that memorandum were copies of all past disciplinary actions taken against her,

---

[1] Although Laws included an FMLA "interference" claim in her Complaint, the district court granted summary judgment in HealthSouth's favor on that claim, and Laws has not appealed that determination.

including the discipline imposed in June of 2007 for excessive absenteeism, discipline which was based, in part, on FMLA-approved absences.

The district court properly rejected Laws' claim that this constituted direct evidence of retaliation. Direct evidence is evidence "which, if believed, *requires* the conclusion that unlawful [retaliation] was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (emphasis added). No inferences are required; the illegal animus is "explicitly expressed." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).

Here, there is no express statement anywhere in the record of a desire to terminate Laws because she had used FMLA leave or because she had complained that FMLA-approved absences were wrongly considered in June 2007 when she was disciplined for excessive absenteeism. A jury may be able to infer from Goldschmidt's memo that these matters played a part in the termination decision, but no such inference is required.

### 2. Circumstantial Evidence

Because Laws has no direct evidence that she was terminated in connection with her use of FMLA leave, she is subject to the traditional *McDonnell Douglas* burden-shifting analysis. *Bryson*, 498 F.3d at 570. Under that analysis, a plaintiff must first establish a prima facie case of FMLA retaliation by showing that she engaged in protected activity, she suffered an adverse employment action, and there was a causal connection between the two. *Id.* (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)). If the plaintiff satisfies this burden, the defendant must offer evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Id.*

6

The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the proffered reason is pretextual. *Id.*

The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the adverse employment action; or (3) the proffered reason was insufficient to motivate the adverse employment action. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 471-72 (6th Cir. 2002) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)) . Regardless of which path is taken, the plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotations omitted). In appropriate cases, a jury may be able to "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000).

Here, the district court presumed that Laws had established a prima facie case of FMLA retaliation, and found that HealthSouth had offered evidence of legitimate, non-retaliatory reasons for terminating her, *i.e.*, the Vicodin incident and the two incidents of insubordination. The district court found, however, that Laws had failed to present sufficient evidence from which a reasonable jury could find that the proffered reasons did not actually motivate the termination, *i.e.*, that the sheer weight of the circumstantial evidence made it more likely than not that the proffered reason for her termination was pretextual. *Manzer*, 29 F.3d at 1084.

Laws had argued that the multiple, conflicting versions of who was involved in the termination decision, along with the shifting reasons given for her termination, supported a finding

of pretext. She noted numerous discrepancies concerning: whether Gosney knew of the Vicodin incident before October 1, 2008; when Fey began her investigation of the Vicodin incident; who was responsible for recommending termination; whether the recommendation was based on Laws' "fearless leader" comment, the Vicodin incident, the chair incident, attendance issues, or a combination thereof; and whether Koehler considered attendance issues in making his decision.

The district court discounted these discrepancies, concluding that the significant facts were not in dispute, and that the stated justification for the termination had not shifted over the course of the litigation. Koehler, the ultimate decisionmaker, has consistently maintained that the Vicodin incident was the sole basis for his decision. The court found that Laws' "gut feeling" that this was pretextual was not enough to create a genuine dispute of fact.

Laws challenges this finding on appeal. She maintains that she has presented sufficient evidence from which a reasonable jury could find in her favor on this claim. Construing the evidence in her favor and giving her the benefit of all reasonable inferences, her FMLA retaliation claim should have survived summary judgment.

Based on the evidence presented, a reasonable jury could reject the reason given by Koehler for Laws' termination. Laws argues that if her charting error in connection with the Vicodin incident posed such a serious risk to patient safety, Fey would not have waited two weeks to discipline her. When the incident happened, Fey merely asked Edmondson to talk to Laws about the notation error. Fey took no disciplinary action at all. Not until Gosney approached Fey about the "fearless leader" comment did Fey decide to suspend Laws, pending an investigation of the Vicodin incident. Under

these circumstances, a jury could find that the Vicodin incident did not actually motivate her termination.

A reasonable jury could also find that Laws was terminated, at least in part, because of her use of FMLA leave. In granting summary judgment, the district court relied heavily on Koehler's statement that his decision was based solely on the Vicodin incident. Koehler admitted, however, that, before making his decision, he reviewed Laws' entire disciplinary history. This included the June 2007 discipline for excessive absenteeism. Although HealthSouth agreed that Laws had been improperly disciplined for FMLA-approved absences, the disciplinary notice nevertheless remained in her personnel file, which was sent to Koehler. When asked, in an interrogatory, to describe the reasons for terminating Laws, HealthSouth responded that the "conclusions and events leading to Plaintiff's termination are well-documented in her personnel file." This leaves open the possibility that attendance was a factor.

Moreover, Fey testified that she, Gosney, and Goldschmidt discussed Laws' attendance problems before they made their recommendation to terminate her. The recommendation refers not only to the Vicodin incident, but also to the two instances of insubordination and past attendance issues. Finally, despite Koehler's statement that his decision was based solely on the Vicodin incident, HealthSouth, in its motion for summary judgment, argued that the two instances of insubordination also played a part in the termination decision. HealthSouth, however, did not argue that past attendance issues factored into the decision, even though they were also included in Goldschmidt's memo.

These shifting explanations and justifications given for Laws' termination are probative, and are sufficient to create a genuine dispute of fact as to whether the proffered reason was pretextual. *See DeLoach v. Island Dental Co., Inc.*, No. 1:04-cv-207, 2005 WL 3533145, at *7 (S.D. Ohio Dec. 22, 2005); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001). Under the circumstances presented here, a reasonable jury could find that, despite Koehler's statement to the contrary, Laws' use of FMLA leave played a factor in the termination decision.[2] The district court therefore erred in granting summary judgment in favor of HealthSouth on Laws' FMLA retaliation claim.

## B.    Discrimination

### 1.    Age Discrimination

Laws brought claims of age discrimination under the Age Discrimination in Employment Act and the Kentucky Civil Rights Act. In order to establish a prima facie case under either statute, Laws must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002).

---

[2] Laws also argues that the timing of the termination decision supports a finding of pretext. She was terminated just a few weeks after taking four days off for her cerebral angiogram. It appears to be undisputed, however, that Laws took accumulated paid time off and sick leave to cover that absence, rather than submitting a request for FMLA leave. Because this was not an FMLA-approved absence, it appears to be largely irrelevant to Laws' FMLA retaliation claim.

The district court held that Laws had not established a prima facie case of age discrimination, because she failed to present sufficient evidence that she was either "replaced" by a younger employee or was disciplined more harshly than similarly-situated younger employees. The court rejected Laws' claim that three younger employees, who had also made charting errors but were not terminated, were "similarly situated" to Laws.

Citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992), the district court stated that there are stringent requirements for proving that other employees are "similarly-situated in all respects." In *Mitchell*, we held that those other employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 583. The district court found that, even assuming that Laws and the three younger employees had the same supervisor, they had not engaged in the same conduct. Two of the younger employees had failed to properly document vital signs of patients. The third had made a note that a patient had received medication when, in fact, the medication was still in the drawer.

On appeal, Laws argues that the district court applied an overly rigid standard of comparison. In *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), we explained that the plaintiff does not always need to demonstrate an "exact correlation" in order to be "similarly situated." Rather, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Id.* at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Laws maintains that, under this

more lenient standard, a reasonable jury could find that she and the three younger employees were similarly situated in all relevant aspects.

We disagree. In *Ercegovich*, we noted that the factors set forth in *Mitchell* "generally are all relevant considerations in cases alleging differential disciplinary action," but may not be relevant "in cases arising under different circumstances." This is why an individualized inquiry is required. *Id.* Laws' situation is akin to *Mitchell* in that both plaintiffs alleged that they were disciplined more harshly than fellow employees for the same or similar conduct. We therefore find that the district court did not err in its analysis. It properly concluded that the three younger employees were not "similarly situated" to Laws. As the court noted, Laws' charting error was the only one that resulted in pain medication being discontinued without a doctor's order, and the only one that caused a patient to suffer unnecessary pain. According to Fey, this was the most serious charting error that she had ever seen, and it was the only incident she ever had to report to the Kentucky Board of Nursing. In these respects, Laws' charting error is clearly distinguishable from the charting errors made by the younger employees. We therefore affirm the district court's finding that Laws failed to establish a prima facie case of age discrimination.

## 2.    Disability Discrimination

Laws also brought claims of disability discrimination under the Americans with Disabilities Act and the Kentucky Civil Rights Act. To establish a prima facie case of disability discrimination, Laws must show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) HealthSouth

knew or had reason to know of her disability; and (5) she was replaced. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

Only the first element is in dispute. The district court found that Laws had failed to show that either her poor sight in her left eye or her reduced endurance levels rendered her "disabled" as that term was defined prior to January 1, 2009, when the amendments to the ADA became effective. "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2008).

"Substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii) (2008). Factors to be considered include the nature, severity, duration, and permanence of the impairment. *Id.* at § 1630.2 (j)(2) (2008). Federal regulations provide that, with respect to the major life activity of "working," the term "substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Id.* at § 1630.2(j)(3)(i) (2008).

Although Laws did not specifically identify which "major life activities" were impacted by her alleged disability, the district court assumed that Laws maintained that she was substantially limited in the major life activities of "seeing" and "working." *See id.* at § 1630.2(i) (2008). Citing *Bryson v. Regis Corp.*, 498 F.3d 561, 576 (6th Cir. 2007), the district court found that Laws had

13

failed to show that her eyesight or endurance level barred her "from working all jobs within the [nursing] field" or prevented her "from holding a large number of jobs in other categories of employment." The court concluded that she had failed to create a genuine issue of material fact concerning whether she was "disabled" or whether HealthSouth regarded her as disabled.

On appeal, Laws argues that the district court erred in its reasoning. We agree. The question of whether Laws was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" is relevant *only* to the major life activity of "working." *See* 29 C.F.R. § 1630.2(j)(3)(i) (2008). The district court's finding, therefore, does nothing to address Laws' alternate claim that she was also substantially limited in the major life activity of "seeing."

With respect to the major life activity of "seeing," Laws need only prove that she is significantly restricted as to the condition, manner or duration under which she can perform that particular activity as compared to the average person in the general population. *Id.* at §1630.2(j)(1)(ii) (2008). It is undisputed that, as a result of the aneurysm, Laws has permanently lost normal vision in her left eye. Her left eyelid droops and she can no longer see any details out of that eye. She can see only dark, foggy shapes. Laws Aff. ¶ 8.

In *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999), the Supreme Court held that "people with monocular vision 'ordinarily' will meet the Act's definition of disability," but must prove that "the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." Technically, Laws does not have monocular vision. She can still partially see out of her left eye. Nevertheless, in our view, she has presented sufficient

evidence to create a genuine issue of material fact concerning whether she is significantly restricted as to the condition or manner in which she can perform the major life activity of "seeing."

Although the district court erred in finding to the contrary, we nevertheless affirm the court's decision to grant summary judgment in favor of HealthSouth on this claim. *See Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002) ("[W]e are free to affirm the judgment on any basis supported by the record."). Since Laws established a prima facie case of disability discrimination, the burden shifts to HealthSouth to articulate a legitimate, non-discriminatory reason for Laws' termination. As noted earlier, HealthSouth has offered evidence that Laws was terminated because of the Vicodin incident. Laws must then prove, by a preponderance of the evidence, that the proffered reason is pretextual.

Although we previously found that Laws submitted sufficient evidence of pretext to survive summary judgment on her FMLA retaliation claim, she has failed to satisfy her burden in connection with her disability discrimination claim. The FMLA retaliation claim was supported by some evidence that Laws' past attendance problems, including discipline encompassing her use of FMLA-approved leave, may have been considered in the decision to terminate her. In contrast, no comparable evidence exists to support a finding that Laws was terminated because she is significantly restricted in her ability to perform the major life activity of seeing. There is no evidence that Goldschmidt, Gosney, and Fey discussed Laws' visual impairment before they recommended her termination. Moreover, Goldschmidt's memo to Koehler says nothing of that impairment, and there is no evidence that Koehler knew that Laws was visually impaired. Under these circumstances, no reasonable jury could find that the sheer weight of circumstantial evidence makes it more likely

15

than not that HealthSouth's proffered reason for Laws' termination was a coverup for disability discrimination.

Therefore, although we conclude that the district court erred in finding that Laws failed to establish a prima facie case of disability discrimination, we nevertheless conclude that summary judgment was appropriately granted because Laws has failed to create a genuine issue of material fact concerning pretext.

### C.     ERISA

As the district court noted, ERISA prohibits employers from retaliating against participants in an employee benefit plan for exercising rights to which they are entitled under the plan. It also prohibits employers from discharging or discriminating against plan participants for the purpose of interfering with the attainment of any right to which the participants may become entitled under the plan. 29 U.S.C. § 1140.

The district court noted that although Laws' Complaint alleged both "retaliation" and "interference" claims, Laws had briefed only the interference claim. The district court nevertheless found that Laws had failed to establish a prima facie case under either theory. Laws has not appealed the court's decision with respect to the ERISA retaliation claim.

As for the interference claim, the district court noted that, in order to establish a prima facie case, Laws must show that: (1) she lost the opportunity to accrue new benefits; and (2) HealthSouth had the specific intent of avoiding ERISA liability when it terminated her. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001). In other words, there must be some evidence of a causal connection. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). The court

found that Laws presented no evidence that HealthSouth had terminated her with the specific intent of avoiding the future payment of health insurance premiums for her or her husband.

On appeal, Laws argues that the district court erred in holding that she had failed to demonstrate the causal connection required to establish a prima facie case. She maintains that she was terminated shortly after incurring extraordinary medical expenses, and argues that it could be inferred that the decision-makers, who worked in the health care field, would have known that the medical bills incurred by her and her husband were substantial.

The district court did not err in concluding that Laws failed to establish a prima facie case of ERISA interference. Even if the decision-makers could have speculated that the medical bills were substantial, there is simply no evidence to support a finding that HealthSouth terminated her with the specific intent of avoiding liability for the future medical bills of her or her husband. As the district court noted, two or three years had passed between the time the bulk of the medical bills were incurred and the date Laws was terminated; temporal proximity to support a causal connection is therefore lacking. More importantly, because it is undisputed that HealthSouth paid the same flat monthly premium rate for health insurance for each of its employees, it had no financial incentive to terminate her. Based on the evidence presented, no reasonable jury could find that HealthSouth terminated her with the specific intent of avoiding future liability for the health care costs of Laws or her husband. We therefore affirm the district court's decision with respect to the ERISA interference claim.

**IV.**

For the reasons set forth above, we **AFFIRM** the decision of the district court granting summary judgment in favor of HealthSouth on Laws' claims of age and disability discrimination, ERISA violations, and FMLA interference. The majority also **AFFIRMS** the district court's decision granting summary judgment in favor of HealthSouth on Laws' FMLA retaliation claim. I, however, believe that genuine disputes of material fact preclude summary judgment on that claim. I would therefore reverse and remand for further proceedings on the FMLA retaliation claim.

SUTTON, J., concurring, joined by CLAY, J. We join all of Judge Rice's opinion except for Part III.A.2. We affirm the district court's denial of all of Laws' claims, including her FMLA retaliation claim.

Laws has not presented any direct evidence to support her FMLA retaliation claim, so the familiar *McDonnell Douglas* framework applies. Under this standard, Laws bears the burden of establishing a prima facie case of discrimination. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008). If she succeeds in doing so, the burden shifts to the hospital to produce a legitimate, nondiscriminatory explanation for its decision. *Id.* At that point, Laws must introduce evidence that would allow a reasonable jury to conclude that the hospital's explanation is pretextual. *Id.*

Even if we assume that Laws has made out a prima facie case, she has no cognizable claim of pretext. The hospital has put forward two solid justifications for firing Laws. First, Laws received two warnings for insubordination in 2008, based on inappropriate interactions with her superiors. Second, and most egregiously, Laws wrote on a patient's chart, in the Physician's Orders section, that the patient's Vicodin should be discontinued. Laws lacked any authorization to make such a notation and caused the patient to suffer intense pain as a result of her misconduct.

Firing Laws for the latter offense alone is eminently reasonable. Patient safety is a hospital's paramount concern, and Laws' actions recklessly caused severe harm to one of her patients. Indeed, Laws' behavior was serious enough to warrant a report to the Kentucky Board of Nursing, a consequence that underscores the gravity of what she did. And this intentional misconduct was on

top of Laws' additional repeated and public insubordinate behavior toward her supervisor. The hospital had ample reason to fire her.

Laws offers several pieces of evidence that she argues might be sufficient for a jury to infer that she was fired because of her FMLA absences. But all of the evidence Laws claims should get her to a jury is highly speculative, and none of it helps overcome the seriousness of her infraction. Even the most generous of juries could not reasonably conclude that the hospital's justification for firing Laws was a pretext for discrimination. The potential implications of Laws' actions for patient safety are simply too great. A hospital, in the normal course of business, must be able to fire an insubordinate nurse after she threatens patients' safety by taking medical decisions into her own hands.

For these reasons, we affirm the district court in full.