NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0225n.06

No. 14-1312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SONYA GREENE, | ) | **FILED** |
| | ) | Mar 24, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| U.S. DEPARTMENT OF VETERANS AFFAIRS; | ) | **UNITED STATES DISTRICT** |
| ERIC K. SHINSEKI, Secretary of Department of | ) | **COURT FOR THE EASTERN** |
| Veterans Affairs, | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    GIBBONS and STRANCH, Circuit Judges; REEVES, District Judge.[*]

   **JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff Sonya Greene appeals the district court's grant of summary judgment in favor of her former employer, John Dingell VA Medical Center ("Hospital"), on her claims that she was unlawfully terminated in retaliation for engaging in protected conduct, in violation of Title VII.  Because Greene is unable to establish a causal connection between her protected activity and her termination, we affirm the decision of the district court.

I.

   Sonya Greene, a registered nurse, began working for the Hospital in May 2008 in the in-patient psychiatric unit.  Marla Gresham, the nurse manager, was Greene's supervisor. Gresham and Greene developed a work friendship and frequently socialized together outside of

---

   [*]The Honorable Pamela L. Reeves, United States District Judge for the Eastern District of Tennessee, sitting by designation.  Judge Reeves is not related to the Pamela Reeves mentioned in the text of this opinion.

1

work. At one point, Greene had even asked Gresham be in Greene's wedding. In late 2008, Gresham was promoted and, as a result, became Greene's second-level supervisor. Ralph Buchanan replaced Gresham as Greene's immediate supervisor. Consequently, Greene's managerial chain of command in ascending order was Buchanan, Gresham, Ann Herm, and Pamela Reeves. Reeves, the Director of the Hospital, was the final decision-maker on all of the Hospital's adverse employment actions.

In the summer of 2009, Buchanan documented several patient complaints concerning Greene. In July 2009, a patient requested a nurse other than Greene because Greene had a "poor attitude" and "harassed" him. In August and September of 2009, other patients complained that Greene referred to the patients as "junkies or drug addicts" and made "inappropriate remarks" to patients. As a result of these complaints, Buchanan counseled Greene in writing in September of 2009, reminding her of the Hospital's expectations for patient care.

In December 2009, a patient complained that Greene kicked her and knocked her to the ground. Following an investigation of the alleged patient abuse, Gresham proposed a seven-day suspension for rude and disrespectful conduct and for failure to follow Hospital policy to prevent disruptive behavior. Following Greene's oral response to the charges against her, Reeves chose not to sustain the charge of rude and disrespectful behavior due to lack of evidence but upheld the policy violation charge. In doing so, Reeves reduced the proposed suspension to an admonishment.

During the spring of 2010, more patients complained about Greene's improper conduct. Specifically, patients described Greene as rude, aggressive, unprofessional, and cruel. Due to these complaints, in May of 2010, Gresham proposed another seven-day suspension for rude and disrespectful conduct. Despite Greene's written response denying the allegations, Reeves upheld

the charge and reduced the penalty to a reprimand. In June of 2010, Buchanan witnessed Greene approach another nurse in a threatening manner "pointing at her face telling her to mind her own business about [Greene's]" coming into work late. Buchanan intervened to prevent an altercation.

It was during this time that Greene and Gresham's friendship became strained. According to Gresham, Greene did not appreciate Gresham's refusal to turn a blind eye to Greene's purported misconduct. The tension came to a head when Greene alleged to the Hospital's Equal Employment Opportunity ("EEO") counselor that she was being subjected to a hostile work environment due to her gender because of emails forwarded by Gresham that she deemed to be offensive.[1] Some of the emails were sexual in nature or depicted nude or partially nude people.[2] Greene's discomfort with the purportedly offensive emails did not inhibit her from forwarding one of them to a male co-worker using her VA email account. Reeves received notice of Greene's complaints of sexual harassment on July 1, 2010. However, the Hospital was not made aware of the bases for Greene's EEO claim until September 15, 2010.

On August 31, 2010, Gresham issued a notice of proposed suspension to Greene for the aforementioned aggressive conduct towards a co-worker, delayed patient care, and careless workmanship resulting in waste of resources. Reeves sustained both the rude conduct charge and the careless workmanship charge and imposed a three-day suspension. Greene amended her pending EEO complaint to add a claim of retaliation as a result of the suspension, and Reeves received notice of this on October 20, 2010.

In 2011, the Hospital received more patient complaints regarding Greene's behavior and attitude. In July of 2011, a patient reported that Greene acted in a "cruel and demeaning way"

---

[1] Greene also apparently informed staff members that she was "going to get" Gresham.
[2] One such depiction included a photograph of a nude child. The Department of Veterans Affairs admonished Gresham for sending the picture on her work email account.

3

and "belittled" her. A physician's assistant confirmed the patient's complaint. In the same month, Greene was observed repeatedly shouting at a patient telling him he could walk or crawl to the seclusion area after he bumped into another patient knocking him out of his wheelchair.

On July 21, 2011, Greene requested advanced annual leave due to a popped blood vessel allegedly caused by stress and anxiety. Advanced annual leave is distinct from leave under the FMLA, which Greene chose not to seek. Although the record does not make clear who denied Greene's request for advanced annual leave, it was undoubtedly denied.[3] Because Greene's leave was not approved, Greene was charged with absence without leave ("AWOL") from July 18, 2011 to August 1, 2011.

On September 2, 2011, Gresham issued a letter proposing Greene's discharge based on the AWOL incident, the episode in July where Greene repeatedly screamed at a patient, yet another patient complaint, and a purported violation of Information Systems Security Program. Greene submitted a response to the proposed discharge, and as a result, the Hospital rescinded the proposed discharge, corrected some typographical errors and clarified details about which Greene had complained, and re-issued it. Reeves upheld the proposed discharge and discharged Greene effective December 5, 2011.

On April 11, 2012, Greene filed an action against the Hospital in federal court alleging claims of hostile work environment and retaliation under Title VII. The Hospital filed a motion for summary judgment. The district court granted the Hospital's motion. Greene subsequently filed a motion for reconsideration, which was denied. Greene now appeals only the district court's grant of summary judgment on her retaliation claim.

---

[3] Buchanan testified that he did not make any decisions or have any influence concerning the approval or denial of Greene's advanced annual leave request. However, Reeves, the Director of the Hospital and Buchanan's supervisor, testified that both Buchanan and Gresham disapproved Greene's request for advance annual leave and, subsequently, she sustained their decision.

II.

A district court's grant of summary judgment is reviewed *de novo*. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of establishing a *prima facie* case of retaliation. To do so, Greene must demonstrate by a preponderance of the evidence that: (1) she engaged in activity protected under Title VII; (2) Greene's exercise of her protected rights was known by the Hospital; (3) an adverse employment action was subsequently taken against her or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 639 (6th Cir. 2009). If Greene can establish a *prima facie* case, the Hospital bears the burden of demonstrating some "legitimate, nondiscriminatory reason for its action." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Should the Hospital produce such a legitimate reason, the burden of production shifts back to Greene to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

5

The parties do not dispute that the first three prongs of Greene's *prima facie* case have been met: (1) Greene engaged in protected activity under Title VII by filing an EEO complaint and by filing amendments to her original complaint;[4] (2) the Hospital knew that Greene engaged in the protected activity after receiving notice of it; and (3) Greene's eventual termination was undoubtedly a materially adverse employment action. Greene's *prima facie* case is dependent on whether she can establish that a causal connection exists between her EEO complaints and her termination.

Greene's claim will fail unless she can show but-for causation, *i.e.*, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). In other words, Greene must demonstrate that "but for [her] allegations of discrimination, [she] would not have been terminated." *Beard v. AAA of Michigan*, --- F. App'x ----, No. 14-1294, 2014 WL 6480380, at *3 (6th Cir. Nov. 19, 2014). Although temporal proximity can be sufficient to constitute evidence where an adverse employment action occurs close in time after the employer learns of a protected activity, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014), when more time elapses between the employer learning of the plaintiff's protected activity and the subsequent adverse employment action, the employee must produce additional evidence of retaliatory motive. *See Eckerman v. Tenn. Dep't of Saftey*, 636 F.3d 202, 209 (6th Cir. 2010) ("[P]laintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity."). In this case, Greene is unable to meet this burden.

---

[4] Greene amended her initial EEO complaint on October 5, 2010 and January 10, 2011.

Greene filed a formal complaint using the Hospital's EEO process in August of 2010. Greene's last amendment to her EEO charge prior to her termination occurred in January of 2011. The adverse employment action, Greene's termination, did not occur until December 5, 2011. While the Sixth Circuit lacks a bright-line rule for temporal connections in retaliation, it has found a four-month period of time insufficient to establish a *prima facie* case of retaliation. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). Here, the fact that over ten months elapsed between Greene's protected activity and the adverse employment action belies a causal connection based on temporal proximity alone.

Greene argues that despite the lack of temporal proximity, two particular facts demonstrate causality: (1) that all of Greene's performance reviews were positive up until management learned about the EEOC complaint; and (2) that the December 2009 allegation of misconduct against Greene was the only complaint handled in accordance with Hospital procedure. This evidence fails to amount to but-for causation.

Turning to the first allegation, a record of positive performance reviews up until the protected activity, coupled with a sharp decline in treatment immediately following the protected activity, could arguably serve to demonstrate causation. But that simply did not occur here. Greene continued to receive satisfactory performance reviews throughout her employment, in spite of numerous patient complaints.

As for the second allegation, courts have held that evidence of failing to follow established disciplinary procedures can demonstrate causation under the mixed-motives test when coupled with other evidence. *See Smith v. Xerox Corp.*, 584 F. Supp. 2d 905, 915 (N.D. Tex. 2008), *aff'd*, 602 F.3d 320, 333 (5th Cir. 2010) (finding causation under mixed-motives test when plaintiff showed close temporal proximity, testimony by HR manager conceding

7

retaliation, and evidence showing that employer neglected to follow its own disciplinary procedures). Greene contends that after her EEO complaint, the disciplinary actions against her were not handled in accordance with Hospital procedure. Pursuant to Hospital procedure, a supervisor should interview the employee immediately after an incident, gather information and reconcile conflicting statements, and propose appropriate action based on the findings. The record does suggest that Buchanan may have departed from Hospital procedure by failing to immediately interview Greene regarding some of the complaints.[5] However, this alone is not sufficient to demonstrate causality.

Even under the now-moot mixed-motives test, *Nassar,* 133 S. Ct. at 2533 (holding in Title VII retaliation lawsuits courts must employ the "but for" causation standard, not the "mixed motive" standard), one court concluded that an employer's failure to follow its standard disciplinary procedures did not by itself establish causation. *See Kemerly v. Bi-Cnty. Servs., Inc.*, No. 1:00-CV-254, 2003 WL 22595802, at *8 (N.D. Ind. Oct. 7, 2003) ("[R]etaliation cannot necessarily be inferred from a company's failure to abide by its stated discipline procedures"); *see also Smith*, 584 F. Supp. 2d at 915. Some factual circumstances, however, could establish a prima facie showing of causation based on an employer's deviation from its own internal disciplinary procedures. *Sorrells v. Veterans Administration,* 576 F. Supp. 1254, 1263-65 (S.D. Ohio Dec. 20, 1983). Greene fails to make her case here. Greene argues that the Hospital's failure to follow proper procedure with respect to her discipline is evidence of causation because it shows that the Hospital wanted to remove her without a full and fair investigation that might vindicate her. But this argument is unconvincing in light of the undisputed facts in the record. Greene's notice of proposed discharge informed her that she had the right to rebut the allegations

---

[5] The Hospital argues that this is not a policy violation because "the policy also requires that the union contract be followed, the union contract sometimes required union involvement to speak with an employee, and Buchanan testified that these provisions of the union contract properly guided his actions." (Appellee's Br. 33.)

leading to her termination, submit evidence in support of her position, and be represented by an attorney of her choice at all stages of the termination process. Green responded to the disciplinary actions against her through the VA's grievance process. She had the opportunity to respond to all allegations leading to her termination, and she used that opportunity to advocate on her own behalf. On this record, Buchanan's failure to immediately interview Greene and propose action after each alleged incident is insufficient for Greene to establish the causation step of her *prima facie* case.

### III.

Even assuming that Greene could establish a *prima facie* case of retaliation, she failed to raise a genuine issue of material fact concerning whether the Hospital's proffered reasons for terminating her were pretextual. The hospital presented evidence showing that its decision to terminate Greene was based on multiple occurrences of rude and disrespectful behavior toward patients, her AWOL, and a violation of Information Systems Security program. In her appellate brief, Greene identifies numerous pieces of evidence—including reports showing that her job performance was satisfactory, and the district court's doubt regarding whether or not Greene was responsible for the violation of Information Systems Security program—that allegedly undermine the Hospital's given reasons for her termination. However, when viewing the evidence in the light most favorable to Greene, no reasonable juror could conclude that the Hospital's proffered reasons were merely a pretext for retaliation.

Greene can show that the Hospital's purported reasons for her termination were pretextual if they (1) "had no basis in fact," (2) "did not actually motivate the employer's action," or (3) were "insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.,*

9

580 F.3d 394, 400 (6th Cir. 2009). Greene argues that she can demonstrate pretext under each theory. We disagree.

Greene is unable to establish that the Hospital's reasons for her termination had no basis in fact. Greene adamantly denies that she attempted to collect information from the confidential shredder bin in violation of the Information Systems Security program. Assuming, *arguendo*, the record does not fully support this proffered reason for her termination,[6] the "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998). Here, the evidence of Greene's misconduct came from both her patients and colleagues. The Hospital documented Greene's troublesome patient interactions as well as the denial of advanced annual leave that resulted in Greene's AWOL status. Accordingly, the Hospital had a sound basis for its belief that Greene's conduct warranted her termination.

Greene also fails to establish pretext under the second method. Under this method, Greene must attack the employer's explanation "by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." *Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir. 2000) (internal quotation marks omitted). The history of Greene's repeated policy violations is strong evidence that Greene's recurrent inappropriate interactions with patients and staff, compounded by her AWOL incident, were the actual reasons for her termination.[7]

Greene again asserts her supervisors' failures to follow established Hospital policy when initiating disciplinary action against her as proof that "an illegal motivation was more likely than

---

[6] The district court commented, "Buchanan's reporting of the incident leaves the Court with the impression that the identity of the nurse who attempted to access the bin cannot be confirmed as Plaintiff."

[7] The discharge notice notes that it considered the repetitive nature of Greene's "inappropriate interaction[s] with patients", as well as her substantial disciplinary record, in determining her termination.

that offered by the [Hospital]." *Johnson v. Kroger*, 319 F.3d 858, 867 (6th Cir. 2003). "[A]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005); *see also Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). In this case, it is uncontested that the Hospital disciplined Greene on several occasions prior to terminating her employment. She was admonished for failure to follow Hospital policy, reprimanded for rude and disrespectful conduct towards patients, and suspended for rude and disrespectful conduct towards a co-worker. The fact that Greene may not have been interviewed in some instances immediately following an incident did not impact the ultimate decision concerning disciplinary action. Greene was able to respond, and did respond, to any and all allegations against her prior to the imposition of any category of discipline. *See White*, 429 F.3d at 246 (finding unpersuasive employee's arguments that employer's circumvention of its own policies served as evidence of pretext because the departures were minor).

Lastly, Greene is not able to show that her conduct was insufficient to warrant her termination. In other words, Greene is unable to demonstrate that employees not in the protected class "were not fired even though they engaged in substantially identical conduct" to that which motivated Greene's termination. *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008). Greene contends that males accused of multiple instances of misconduct were treated more favorably. For instance, she points to one male nurse who was charged with both AWOL and failure to accurately document progress notes but received only a reprimand. Another male

11

nurse was charged with rude and unprofessional behavior towards a co-worker, disrespectful behavior and use of obscene language toward a patient, and violating Hospital policy but also only received a reprimand. Greene fails to recognize that in reaching her decision on what disciplinary action to take, the supervisor considers other factors "including your years of service, *your past work record*, and if any mitigating or extenuating circumstances would justify alteration . . . of the proposed penalty." The record is silent on the past history of these male employees. Greene's substantial disciplinary history—which includes an admonishment, a reprimand, and a suspension—distinguishes her from these other employees. *Russell*, 537 F.3d at 607. Moreover, as the district court noted, Greene's "actions are a combination of different types of misconduct, but her comparables appear to have engaged in one form of misconduct or the other." None of the male employees has a charge of rude and disrespectful behavior toward patients combined with a charge of AWOL. Thus, Greene has failed to show that her conduct was insufficient to justify her termination.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

12