NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0286n.06

Case No. 21-5959

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KIMETTA SUBLETT, | ) | **FILED**<br>Jul 18, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| MASONIC HOMES OF KENTUCKY, INC., | ) | |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

Before: SILER, McKEAGUE, and LARSEN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff appeals the district court's order granting summary judgment in favor of Defendant on Plaintiff's claims that Defendant violated the Americans with Disabilities Act and the Kentucky Civil Rights Act by discriminating against her in employment based upon disability and age, failing to accommodate her disability, and retaliating against her for protected activity. We affirm.

I.

Plaintiff-Appellant Kimetta Sublett is a former employee of Defendant-Appellee Masonic Homes of Kentucky (MHK). Sublett worked for MHK for over thirty years, first as a nurse aide and then working her way up to Director of MHK's Pillars Assisted Care Center. In January 2017, Sublett was diagnosed with "moderate emphysema," which she disclosed to MHK Human

Resources employee Paula Walker. Sublett also claims to have told CEO Gary Marsh of her emphysema diagnosis to explain why she could not participate in a work event. Sublett alleges that Marsh expressed sympathy for her condition. While working at Pillars, Sublett asked for a closer parking spot so that she wouldn't get as winded walking into work, which she received.

In late 2017, MHK decided to merge the Pillars facility with a new MHK facility. The Pillars Director role was eliminated in favor of a combined director position for the merged facilities. In December 2017, Sublett was informed by Marsh and J. Scott Judy (COO of MHK) that her position was being eliminated and that they were considering transferring her to a new position at a different facility named Miralea.

In April 2018, Sublett assumed her new position as Resident Services Manager ("RSM") at Miralea, reporting to Director Mike Truax. Truax had previously acted as RSM at Miralea, earning a salary of $97,000 per year. Upon transitioning from Director at Pillars to RSM at Miralea, Sublett's salary increased from $65,000 to $75,000. As RSM, her duties involved substantially similar skills to her duties at Pillars. Sublett outwardly expressed excitement about the transfer. However, she attests that she was inwardly upset about it, and that she was told she could not refuse the move. Chris Just was hired as the Associate Executive Director of Pillars in February 2018, with the intention that he would become director of the merged facilities once the merger was complete. He immediately assumed duties additional to those which had been performed by Sublett.

While at Miralea, Sublett and Truax spoke at least twice about her emphysema. Truax testified that he and Sublett primarily talked about her doctor advising her to get more exercise and change her diet. He attested that he understood that emphysema is a lung disease marked by

"diminished airflow to the lungs." Truax acknowledged that emphysema can be "exasperated" such that it significantly interferes with respiratory functions.

At the Miralea facility, Sublett alleges that her emphysema made it difficult for her to walk the long distance from where she had to park to the building. Sublett attests that she told Truax of this problem, citing her emphysema and asking him and Marty Hess, a facilities worker, for closer parking. Truax told her to park in the overflow lot, and said that she could use her badge to get into a door closer to the lot. Sublett's badge did not work on the door when she tried to use it, so she attempted to park in a vacant parking space next to the building, but Truax dissuaded her from doing so. After that, she parked in the main employee lot. Sublett claims that even this parking spot was not sufficient for her, as she still had to walk some distance, often in the heat. Sublett also alleges that she requested to be excused from being asked to participate in voluntary, physically-demanding tasks such as waiting on the residents at Miralea's cafeteria and rearranging furniture, due to her emphysema and attendant difficulties. Truax testified that Sublett did request to be excused from helping in the cafeteria, saying it was "too hard," but that Sublett did not state that the request was due to any illness. After her request, Sublett was no longer asked to help with meals. However, Sublett claims that she was still asked to do heavy lifting, such as furniture rearrangement.

Beginning in May 2018, Sublett was allegedly involved in several incidents at work resulting in complaints, including: (1) using a derogatory term in the cafeteria in front of residents; (2) disclosing confidential patient information over the phone out in the open, potentially violating HIPAA; and (3) calling her coworker a profane term in potential earshot of residents. The first incident was reported to Truax by a resident's daughter. Truax spoke with witnesses (Sublett's coworkers) regarding the other two incidents. He did not interview one employee, Gertrude Reed,

who alleges she was at the scene of the third incident and denies the use of profanity by Sublett. Sublett denies wrongdoing in all three incidents.

After each of these incidents, Truax had a discussion with Sublett about her alleged behavior. After the third incident, Truax called a meeting on July 24, 2018, with Sublett and Brandi Muir, an office manager. At this meeting, Truax presented Sublett with a Performance Improvement Plan ("PIP") based on the three incidents. The PIP asked Sublett to "address interpersonal skills," "improve communication techniques," "participate in periodic coaching sessions with [Truax and HR]," and "complete interpersonal communication training." R. 50-13 at 255-56. It did not require her to admit that the incidents in fact occurred. At the meeting, Sublett became upset, and continued to deny the allegations. She refused to agree to the PIP, or even read it fully. Truax asked Sublett to meet again the next day after a cooling off period. At that meeting, attended by Sublett, Truax, Muir, and Trasee Whitaker (MHK's Chief Human Resources Officer), Sublett again refused to sign and accept the PIP. Truax asked Sublett to leave the room, and then allegedly decided to terminate her for insubordination for refusing to participate in the PIP. After her termination, Truax created an RSM job description indicating that the position requires a significant amount of physical activity.

Sublett filed an action in Jefferson Circuit Court (Kentucky), which was subsequently removed to United States District Court for the Western District of Kentucky. In her complaint, Sublett asserted claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. Following discovery, MHK moved for summary judgment, which the district court granted for all claims.

II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-movant. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Summary judgment is appropriate when there are no genuine issues of material fact and a party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a). The plaintiff must provide more than a mere "scintilla" of evidence: "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on a motion for summary judgment. *Id.* at 255 (citing *Adickes v. S H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Sublett appeals the district court's grant of summary judgment on her disability discrimination, age discrimination, accommodation, and retaliation claims. We address each in turn.

## A. ADA/KCRA disability discrimination claim

Sublett alleges that MHK discriminated against her on the basis of her disability, in violation of the ADA and the KCRA.[1] The burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs the use of circumstantial evidence in a disability discrimination case. *See Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021). Where, as here, the plaintiff does not provide direct evidence of intentional discrimination, she bears the burden of proving a prima facie case of disability discrimination. *See id.* This consists

---

[1] Kentucky courts interpret the KCRA parallel to federal law and rely on federal case law in interpreting the KCRA. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) ("The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith." (citations omitted)). This Court will follow suit and discuss the alleged violations of both the ADA and the KCRA together.

of proving: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)). Once this burden is met, the onus shifts to the defendant to provide a legitimate, non-discriminatory reason for any demonstrated adverse employment action. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019). If in turn the defendant meets this burden, the plaintiff bears the ultimate burden of demonstrating that "the proffered explanation is pretextual." *Id.* (quoting *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016)). Here, while Sublett may have established a prima facie case of disability discrimination, she has not provided sufficient evidence of pretext such that a reasonable jury could rule in her favor.

### a. Prima facie case

Sublett asserts that she is disabled due to her diagnosis of emphysema, and that her over thirty years of service for MHK demonstrate that she is qualified for the Pillars Director and Miralea RSM positions. MHK does not challenge these claims. Sublett's replacement after termination, Shannon Wolfe, is not disabled. Thus, we will assume that the first, second, and fifth prongs of the test are satisfied, leaving only the question of whether Sublett suffered an adverse employment action and whether MHK knew or had reason to know that she was disabled.

### i. Adverse employment action

Adverse employment actions are "materially adverse change[s] in the terms and conditions of [a plaintiff's] employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th

Cir. 2004) (en banc) (citation omitted). An adverse employment action must be more than a mere "bruised ego" or "inconvenience or an alteration of job responsibilities." *Id.* at 797 (citation omitted). Adverse employment actions are usually denoted by a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 798 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Sublett proffers three potential adverse employment actions. First, she alleges that she was "severely underpaid" in comparison to her "non-disabled counterparts," both as Pillars Director (compared to the Director salaries of Truax and her replacement, Just) and as Miralea RSM (compared to Truax's previous salary as Miralea RSM). *See* Appellant's Br. at 32–33. Regarding her Director salary, Sublett never alleges that her pay in that position changed at all after she was diagnosed with emphysema or after she told anyone at MHK about her diagnosis. Her Director salary thus cannot be considered an adverse employment action, as there was no "materially adverse change." *White*, 364 F.3d at 795. Sublett's argument that the Director salary disparity constitutes an adverse employment action fails for the additional reason that she has not provided evidence that a similarly situated, non-disabled employee was paid more for the same work. Sublett's replacement at Pillars, Just, was hired with the intention of directing two combined facilities, and he instantly took on additional duties that Sublett did not perform.

And while Sublett points to Truax's salary in the RSM position as compared to hers, MHK provides evidence that Truax was not similarly situated, even if the roles were the same. Based on his past employment as Vice President of Therapy Services, Truax was considered an executive employee, whose salary did not change when he assumed the RSM role. Sublett has provided no counter evidence indicating that Truax is an apt comparator beyond sharing the same job title.

Thus, Sublett has not sufficiently proved that the pay disparity in the RSM position constitutes an adverse employment action.

Sublett also alleges that her involuntary transfer from Pillars Director to Miralea RSM constitutes an adverse employment action. She points to the fact that as RSM she was subordinate to the Miralea director, a position which Truax described as "on the same playing field" as her former Pillars Director position. *See* Appellant's Br. at 33–36; R. 57-3 at PID 405. Truax attested that he considered the move from RSM to Director a promotion for himself. The district court determined that the transfer was not adverse, noting Sublett's increase in salary, the substantially similar job duties, and the fact that the Pillars Director position was in the process of being eliminated.[2]

It is unclear whether Sublett's transfer was an adverse action. Her salary did increase, indicating that the move was a promotion. But this Court has held that "[a] reassignment without salary or work hour changes . . . may be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White*, 364 F.3d at 797 (quoting *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886 (6th Cir. 1996)). However, because Sublett cannot demonstrate pretext, as described below, it is unnecessary to decide whether the transfer constitutes an adverse employment action. We therefore presume—without deciding—that the transfer was adverse.

---

[2] The district court's focus on the elimination of the Pillars Director position is slightly misplaced, as that fact speaks to the reasoning behind an adverse action, not the nature of the action itself. The elimination of a position can constitute an adverse employment action if the reasons behind the elimination are discriminatory. *See, e.g.*, *Schutter v. Harold Zeigler Auto Grp., Inc.*, 416 F. Supp. 3d 708, 718 (W.D. Mich. 2019) ("Conceivably, [the] elimination of [Plaintiff's] corporate marketing manager position could constitute an adverse action.").

Finally, Sublett alleges that her termination constitutes an adverse employment action. As the district court correctly concluded, termination is a textbook adverse employment action, and MHK admits as much. *See* Appellee's Br. at 21 ("The District Court correctly recognized that termination of employment is considered an adverse employment action."). Thus, Sublett has provided sufficient evidence that she suffered an adverse employment action, satisfying the third prong of the prima facie case.

### ii. Knowledge of disability

The district court concluded that, for the purposes of this motion, it must presume that MHK knew that Sublett was disabled. We agree. In establishing a prima facie case of discrimination, a plaintiff must demonstrate that the decisionmaker who instigated the allegedly discriminatory action knew or believed that the employee was disabled. *See Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 843 (6th Cir. 1996). In Sublett's case, the alleged discriminators are Marsh and Judy, who decided to transfer Sublett to the RSM position, and Truax, who made the decision to fire her. Sublett alleges that she told Marsh of her emphysema (and asked for accommodations) prior to her transfer. She also alleges that she discussed her emphysema with Truax multiple times, both in the context of asking for accommodations and in regular conversation, the latter of which Truax admits. MHK presented evidence in response—namely, Truax's testimony that he only spoke with Sublett informally regarding her emphysema, that he did not understand that her emphysema made her disabled, and that he did not think that her request to be relieved from waiting on the residents was due to disability.

Both sides presented evidence on this issue chiefly in the form of testimony, and, at the summary judgment stage, "credibility judgments and weighing of the evidence are improper."

*Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014)). Taking the evidence in the light most favorable to the plaintiff, Truax has admitted that he knew Sublett had emphysema and that he had a general understanding of what emphysema was. Thus, for the purposes of a motion for summary judgment, the district court was correct to assume that Sublett demonstrated knowledge of her claimed disability, and we do the same. Sublett has therefore established a prima facie case of disability discrimination.

### b. Legitimate, non-discriminatory rationale and pretext

Once a plaintiff demonstrates a prima facie case of discrimination, the defendant must provide a legitimate, non-discriminatory rationale for the allegedly discriminatory actions. The burden then shifts to the plaintiff to prove that the provided rationale is pretextual. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019). A plaintiff can establish pretext in three ways: evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (citation omitted).

MHK supplied evidence that Sublett's transfer to RSM—which we have assumed constitutes an adverse employment action—was motivated by the elimination of her position, due to the merging of two facilities. This is a non-discriminatory rationale, meeting MHK's burden. In response, Sublett points only to the fact that her successor, Just, did not actually assume management duties over both facilities until several months after her transfer. However, this contention does not rebut testimony from MHK employees that the merging of facilities and Just's combined Director role were intended before Sublett was transferred and were the reason for that

transfer. Just also immediately assumed additional duties to those performed by Sublett in the role. Sublett has therefore failed to provide evidence from which a reasonable jury could conclude that the reason behind her transfer was pretextual, and that discrimination was the true motivating factor.

MHK also supplied evidence that Sublett's termination was motivated by her insubordination in refusing to sign a PIP addressing performance issues. This court has repeatedly found that "insubordination may constitute a legitimate, nondiscriminatory reason for adverse action." *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) (collecting cases).

Sublett argues that this justification is pretextual because: (1) the underlying events motivating the PIP are false, and the investigation into and documentation of those events was subpar and in violation of MHK's own policies; (2) Truax rewrote the RSM job description after Sublett's termination to include more physical activity; (3) Sublett's behavior was not sufficient to motivate her termination; and (4) there was temporal proximity between "increased scrutiny" of Sublett's behavior and disclosure of her disability. These contentions do not constitute sufficient evidence of pretext.

First, the truth of the underlying events of the PIP is irrelevant in this case. The crucial factor is whether the individual who terminated her—Truax—honestly believed that the underlying events occurred, and whether he fired Sublett due to her refusal to sign the PIP addressing those events. As this Court has previously stated: "If an employer has an honest belief in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext. . . . [W]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial,

or baseless." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (citation omitted). Sublett has provided no evidence beyond conjecture that Truax did not believe that the events motivating the PIP actually occurred. MHK also does not allege that she was fired for those acts alone, but chiefly for her refusal to sign the PIP addressing them. Sublett does not allege that that specific incident did not occur.

Further, Sublett's objections to the quality of the investigation and documentation are insufficient to establish that Truax acted unreasonably or unreasonably believed she was guilty of the offenses in the PIP. Employers are not required to conduct the most thorough investigation possible; rather, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned."). While Sublett complains that Truax failed to interview a particular witness to one of the events, Truax interviewed Sublett and all other present witnesses, and otherwise relied upon a customer complaint. This investigation is reasonable in its scope.

In addition, Sublett's claims that Truax violated MHK's internal policies during the disciplinary process are unhelpful to her here, as she has supplied no evidence that similarly situated, non-disabled employees were treated differently than she was (i.e., that the rules were followed for others and not for her). "[A]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (citation omitted); *see also Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015) ("An employer's failure to follow internal disciplinary protocols is most probative when coupled with evidence that the employer followed

the protocols for people outside of plaintiff's protected class."). While "failure to uniformly apply a progressive discipline policy can be evidence of pretext," *Miles*, 946 F.3d at 896, Sublett has provided no such evidence of selective application. Sublett has therefore presented insufficient evidence to demonstrate that Truax acted unreasonably.

Second, Sublett's evidence regarding the creation, after her termination, of an RSM job description which included significant physical activity, is insufficient to support a finding of pretext.[3] Sublett offers no case law in support of her position that a job description created after an employee was fired is relevant to the intention behind the termination. Further, MHK provided testimonial evidence that Truax intended to evolve the RSM position after Sublett left for a non-discriminatory reason—the opening of a new facility. Sublett has provided no evidence to counter that contention beyond testimony from one MHK employee that the job currently remains largely sedentary. However, that fact alone does not indicate that Truax did not honestly, at the time he wrote the description, intend to transform the job into a more physical one based on the opening of a new facility. The bare assertion that the change in job description indicates pretext is thus insufficient evidence upon which a reasonable jury could rely.

Third, Sublett has failed to demonstrate that she did not commit an offense sufficient to motivate her termination. MHK provided clear evidence indicating that Sublett's conduct immediately prior to her termination—refusing to sign her PIP or even read it in full—was a fireable offense under MHK policy. The MHK employee handbook states that level 3 misconduct—which calls for termination—includes "[w]illful failure to perform job duties . . . or act of insubordination." R. 50-15 at PID 268, 271. By refusing to sign or interact with the PIP—

---

[3] Sublett characterizes this action as Truax "modifying" a previous job description. *See* Appellant's Br. at 26. However, the evidence indicates that the previous job description was for a different position, which was used as a base for the RSM description, which did not previously exist.

which did not require her to admit wrongdoing, but rather just to agree to work on her behavior—as her supervisor, Truax, requested her to do, Sublett acted insubordinately. Sublett has also not pointed to any employees who acted in a similar manner who were not fired, further damaging her claim. *See Greene v. United States Dep't of Veterans Affs.*, 605 F. App'x 501, 508 (6th Cir. 2015) (concluding that the plaintiff was unable to demonstrate that "her conduct was insufficient to warrant her termination" as she could not show that "employees not in the protected class were not fired even though they engaged in substantially identical conduct") (citation omitted)). Thus, Sublett's argument that her behavior did not warrant dismissal fails.

Finally, the temporal proximity argument, on its own, fails because "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001). As the other evidence marshalled by Sublett is either irrelevant or insufficient, temporal proximity is not enough to establish pretext in this case.

### B. ADA/KCRA failure to accommodate claim

Sublett next alleges that MHK failed to accommodate her disability in violation of the ADA and the KCRA. To prevail on her failure to accommodate claim, Sublett must establish that: "(1) she was disabled within the meaning of the [statute], (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the defendant failed to provide the necessary accommodation."[4] *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*,

---

[4] MHK argues that the requested accommodation must be for an "essential function" of the employee's job. *See* Appellee's Br. at 51-52. However, there is no requirement that the requested accommodation relate to an essential function. *See, e.g.*, *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) ("An employee is deemed qualified only if she can perform all of the essential functions of her job, whether accommodated or not."); *see also Sanchez v. Vilsack*,

974 F.3d 652, 669 (6th Cir. 2020). While there is "no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation, . . . [an employee] must make it clear from the context that [the request] is being made in order to conform with existing medical restrictions." *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016) (citation omitted). As stated previously, MHK does not contest that Sublett is disabled or that she is otherwise qualified for the position, and we presume Truax knew about Sublett's disability. The sole remaining disputes are therefore whether Sublett requested any accommodations and whether MHK failed to provide necessary accommodations.

Sublett alleges that she made multiple accommodation requests: (1) to stop waiting on residents at Miralea's cafeteria; (2) to get closer parking; and (3) to be excused from other physically demanding tasks such as heavy lifting and rearranging furniture. For each of these three requests, she asserts that she specifically linked her request to her disability. In response, MHK argues that Sublett did not specify that any of her requests were due to her disability, citing testimony from Truax.[5] Summary judgment in favor of MHK was proper on Sublett's claims.

Regarding waiting on residents, Sublett does not deny that Truax relieved her of this responsibility upon request. She was thus granted the accommodation she requested and cannot establish a failure to accommodate claim on this point.

---

695 F.3d 1174, 1181 (10th Cir. 2012) ("[E]mployers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job." (quoting *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993))).

[5] MHK also asserts that the district court found that Sublett had not made any accommodation requests. However, the portion of the district court opinion MHK cites appears to state only that there were no accommodations requested beyond those which were granted. It does not explicitly state that the initial request for closer parking, or the request to stop waiting on residents, were not accommodation requests, and appears to treat them as though they were.

Regarding parking, Sublett testified that she asked Truax to help her find closer parking, and that he told her to park in the employee overflow lot, which was closer to the building. On its face, this accommodation appears reasonable. Sublett did testify that she was unable to use the door near the overflow lot, and eventually resorted to the main employee lot, where she still had to walk a distance in the heat. However, she does not allege that she informed Truax that the provided accommodation was insufficient to alleviate her difficulties. Thus, her initial request for accommodation was reasonably granted. While it may not have been sufficient in the end, she did not request further accommodation or inform her superior that the accommodation was unacceptable. For that reason, her failure to accommodate claim in relation to parking also fails.

Finally, even taking into account the attestations in Sublett's affidavit,[6] Sublett has provided insufficient evidence that she made an accommodation request regarding heavy lifting or furniture rearrangement. The only evidence Sublett provides on this issue consists of statements in her affidavit, which she attached to her response to MHK's motion for summary judgment. These statements—found only in a self-serving affidavit, and not anywhere in Sublett's deposition testimony or other evidence revealed in discovery—do not specify dates for the alleged requests or describe the tasks beyond general terms. This showing amounts to no more than a "scintilla" of evidence, and thus is insufficient to create a genuine dispute for trial. *See Anderson.*, 477 U.S. at 247–48.

Sublett further asserts that MHK failed to engage in an interactive process to discuss accommodations. This claim fails as interactive process claims require that the employee have

---

[6] The district court excluded these statements as contradicting her deposition testimony. It is unnecessary for us to decide this issue, as even with the statements in her affidavit, Sublett has failed to provide sufficient evidence that she made an accommodation request regarding these activities.

requested an accommodation that was denied, *see Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021), and Sublett has not, as described, sufficiently proven that she made such a request. Thus, Sublett's failure to accommodate claim fails.

### C. KCRA age discrimination claim

Sublett further alleges that MHK discriminated against her based upon her age. Specifically, she asserts that the pay disparity between her and Truax and her and Just is based on her age. As with her disability discrimination claim, because she lacks direct evidence, Sublett must satisfy the *McDonnell* burden-shifting test. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citation omitted). To establish a prima facie case of age discrimination, Sublett must demonstrate that: "(1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly situated individuals." *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 410–11 (6th Cir. 2012). The burden then shifts to the defendant to produce a nondiscriminatory rationale for the challenged action. *Hardin v. Jefferson Cty. Bd. of Educ.*, 558 S.W.3d 1, 9 (Ky. Ct. App. 2018). If the defendant does so, then the burden shifts back once again "to the plaintiff to demonstrate by a preponderance of the evidence that the actions were motivated by his age and that the proffered reason was a mere pretext for age discrimination." *Id.*

Even if Sublett has made out her prima facie case, MHK provided legitimate, non-discriminatory reasons for the transfer, termination, and pay disparity that Sublett has failed to sufficiently rebut. As discussed in relation to her disability discrimination claim, Sublett's Pillars Director position was eliminated due to the merging of two facilities, necessitating her transfer. And Sublett was terminated from her RSM position for insubordination. In addition, as previously

described, MHK has provided evidence that neither Just nor Truax are adequate comparators for pay, as Truax had an executive background and Just was lined up to direct the merged facilities. Sublett has not provided any evidence regarding similarities between herself, Truax, and Just beyond job title. Thus, Sublett has provided no evidence of pretext beyond the bare allegation that she was paid less than younger (but not-similarly-situated) individuals, and that she was eventually replaced by a younger individual. This is insufficient to support a claim of age discrimination. *See, e.g.*, *Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986) ("The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination.").

### D. ADA/KCRA retaliation claims

Sublett finally alleges that she suffered retaliation for her accommodation requests in violation of the ADA and the KCRA. To establish this claim, Sublett must demonstrate that: "(1) she engaged in a protected activity; (2) her 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

Putting aside the first three prongs, Sublett's claim fails because she cannot establish the fourth prong—a causal connection. As detailed in the disability discrimination section, MHK has provided a legitimate, non-discriminatory reason for terminating Sublett—her insubordination in refusing to sign a PIP based on behavioral incidents reasonably investigated by MHK. Sublett has failed to sufficiently demonstrate that this reason was pretextual, and that either her disability or her accommodation requests led to her termination. As with the discrimination claim, the evidence

Sublett provides for the causation element of her retaliation claim is limited to temporal proximity, failure by MHK to conform to company policy regarding investigation/documentation, and "increased scrutiny" of her work. And as with the discrimination claim, this scant evidence is not enough for a reasonable jury to conclude that Sublett has sufficiently proved causation. Thus, the retaliation claim fails.

III.

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment for Defendant-Appellee.